UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SPENCER FRANCHISE SERVICES OF GEORGIA, INC. | * * * | CIVIL ACTION NO. 2:13-CV-04688 |
| | * | SECTION "J" |
| versus | * | JUDGE CARL BARBIER |
| | * | |
| WOW CAFÉ AND WINGERY FRANCHISING ACCOUNT, L.L.C. | * * | MAGISTRATE (2) JUDGE JOSEPH C. WILKINSON, JR |
| | * ** | |

* * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF RALPH A. LITOLFF, JR.**

MAY IT PLEASE THE COURT:

Ralph A. Litolff, Jr., ("Litolff") is the kind of witness the Supreme Court had in mind in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)("*Daubert*") when it directed trial courts to act as "gatekeepers" of proffered expert testimony.

Litolff is an individual who has spent his entire career in the field of public accounting. However, he is not an expert about the operations and economics of the franchise industry. And this case revolves around the franchise industry. Moreover, his scientific "method" is non-existent.

Litolff, whose resume reveals that he is a CPA with absolutely no training or expertise in the franchise industry, has submitted an "Expert Report" that is limited *solely* to critiquing the expert report of Plaintiff's expert who has extensive experience in the franchise industry. Actually, Litolff's "Expert Report" is not a report at all – it is simply an outline for counsel's cross-examination of Plaintiff's expert.

Accordingly, as provided by *In re Tasch v. Sabine Offshore Service, Inc.*, 1999 WL 596261 (E.D. La. 1999)(expert witness must "bring to the jury more than the lawyers can offer in argument" (citing *In Re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)), Litolff's testimony should be excluded on the following three separate and independent grounds:

*First*, Litolff is not qualified to testify about (a) the franchising business in general or (b) the report of Plaintiff Spencer Franchise Services of Georgia, Inc.'s ("Spencer") franchising expert in particular. While Litolff may be an accountant, his "Expert Report" falls far outside his field of expertise.

*Second*, Litolff's testimony based upon his "Expert Report" will be unreliable and will be irrelevant because it will not assist the trier of fact. Without any experience or specialized knowledge in the franchise business, Litolff simply has prepared on behalf of Defendant WOW Café and Wingery Franchising Account, L.L.C. ("WOW") a cross-examination of Spencer's franchise expert.

*Third*, Litolff's testimony should be excluded because he has failed to file an expert report that comports with the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

As explained by the Fifth Circuit opinion in this case (*Spencer Franchise Services of Georgia, Incorporated v. WOW Café and Wingery Franchising Account, L.L.C.*, 624 Fed. Appx. 842 (5th Cir. 2015)(*per curiam*)("5th Cir. Opinion")(copy attached hereto as Ex. "1"):

> "WOW Cafes are 'American grill'-style restaurants located throughout the United States. WOW owns the WOW restaurant concept, and it authorizes and controls various aspects of brick-and-mortar WOW locations via franchise agreements.
>
> In 2007, Spencer [Franchise Services of Georgia, Inc. ("Spencer")] and WOW entered into the 'Area Development Agreement' ('ADA') at issue in this case. Pursuant to the ADA, Spencer promised to pay WOW $175,000 up front and open two WOW franchises in Georgia. Spencer also promised to manage and provide support to WOW franchise locations in Georgia [and, potentially, South Carolina], advertise WOW restaurants, and furnish regular reports to WOW regarding the franchises' performance. In return, WOW granted Spencer the exclusive right and option to 'establish, operate, and/or provide guidance to multiple WOW Café Franchise businesses' in Georgia, with the exception of two counties in the state. WOW promised not to 'establish or operated WOW Café' Units' or 'grant a franchise' in Georgia to any entity other than Spencer, except as otherwise provided in the ADA. The ADA gave Spencer the right to receive weekly operating fees and royalty payments from Georgia franchise locations; broker fees for newly-opened franchises; and advertising fees.
>
> The dispute in this case revolves around a single word in Article 4.2 of the ADA, which provides in relevant part:

3

> In addition to Developer's obligation to open its own Franchise Units as described above, *Franchisor* shall, at a minimum, sell or cause some third party to sell the number of Franchise Units set forth on the Minimum Development Requirements, which is attached hereto as Schedule 2.

Critically, the ADA defines Spencer as the 'Developer' and WOW as the 'Franchisor.' Thus, as written, the ADA obligates WOW -- not Spencer - - to sell (or cause some third party to sell) a minimum number of franchise agreements.

. . . .

[In or after 2011] Spencer accused WOW of breaching the ADA by failing sell the minimum number of franchises specified in Article 4.2 and Schedule 2 of the ADA. WOW responded that it had no such obligation under the ADA. According to WOW, the word *"Franchisor"* in Article 4.2 is an obvious typographical error; 'Franchisor' should instead read 'Developer.' Thus, claims WOW, Spencer is the entity obligated to sell and open a minimum number of WOW restaurants in Georgia, not WOW. . . . [

Spencer, by contrast, maintains that the ADA means what it says. Spencer asserts that WOW, not Spencer, is the entity obligated to sell a minimum number of franchise agreements, as the plain text of Article 4.2 provides. According to Spencer, the contract contemplated that Spencer would provide a substantial initial investment and support for WOW franchises. Spencer contends that the deal would not have been worth their investment unless WOW opened a number of franchises so that Spencer could collect royalties and broker frees from those new restaurants.

. . . .

. . . Spencer produced competent summary judgment evidence that the parties intended the ADA to mean what it says.

. . . .

Spencer has also produced competent evidence that, during the five year period after WOW and Spencer entered into the ADA, WOW sold franchise agreements as contemplated by the written text of Article 4.2. In

4

other words, the record contains some evidence that the parties engaged in a course of conduct consistent with the agreement as written."

*Id.* at 843-846 (emphasis in original).

## ISSUES AT TRIAL

The principle issues at trial are (1) "whether WOW, Spencer, or both entered into the ADA suffering from error, specifically that 'Franchisor' in Article 4.2 should have read 'Developer'" (5th Cir. Opinion at 846); (2) what are the possible markets for WOW stores in Georgia and South Carolina; (3) what is the possible range of WOW franchises that could have been sold and the range of stores that could have been opened and closed in those markets; and (4) the damages that Spencer incurred as a result of WOW's breach of the ADA.

## LEGAL ARGUMENT

I.  *Daubert et al.* **require the Court to exercise its gatekeeping function**

Fed. R. Evid. 702 limits the admissibility of expert evidence as follows:

"A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

      (d)    the expert has reliably applied the principles and methods to the facts of the case."

Before an expert can offer opinion testimony, the offered testimony must pass the tests enunciated in *Daubert*. "Both scientific and nonscientific expert testimony are subject to the *Daubert* framework". *Oaks v. Westfield Ins. Co.*, 2014 WL 198161 *1 (E.D. La. 2014)(citations omitted)(Barbier, J.).

### A. WOW has the burden of proving its expert meets *Daubert's* requirements

When there is a *Daubert* challenge, "the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence." *Id.* (*Daubert* motion *in limine* granted where testimony "is (a) unreliable, (b) beyond the expert witness's expertise, and (c) unhelpful to the trier of fact").

#### 1. The expert's proposed testimony must be reliable

An "expert's testimony must be reliable at every step, including the methodology employed, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *Macy v. Whirlpool Corp.*, 613 Fed. Appx. 340 (5th Cir. 2015)(first proffered expert on general causation was unreliable, and second proffered expert did not possess sufficient specialized knowledge"; both properly excluded).

### 2. The expert's proposed testimony must be relevant

The proposed expert testimony must be relevant "''not simply in the way all testimony must be relevant (pursuant to Rule 402), but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 2012 WL 4959640 *1 (E.D. La. 2012(citations omitted)(Barbier, J.)(motion *in limine* granted where expert report and testimony were not reliable or relevant, and witness's background "does not demonstrate to the Court that he is qualified to render an opinion").

### 3. The expert's proposed testimony must be helpful to the jury

Thus, an expert's opinion is inadmissible when it is unhelpful to the trier of fact. For example, a "jury can assess credibility and make appropriate factual findings without the aid of any expert testimony." *Oaks v. Westfield Ins. Co.*, 2014 WL 198161 *1 (quoting *Scineaux v. Empire Fire and Marine Insurance Co.*, 2005 WL 2050281 (E.D. La. 2005)(Barbier, J.)(two experts for each side not needed to help jury decide how car crash occurred)).

For another example, where a plaintiff alleges that he was injured when he tripped over a mooring line on a vessel, the fact-finder "is capable of evaluating this situation based on its common knowledge and experience." *McCord v. Fab-Con, Inc.*, 2014 WL 3490964 *1 (E.D. La. 2013)(citations omitted)(Barbier, J.)(motion *in limine* granted in bench trial where testimony will not assist fact-finder).

B. **When the proposed expert's testimony is not reliable, relevant and helpful to the jury, it must be excluded**

As this Court has explained, *Daubert* interpreted Rule 702 as "requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand." *Francois v. Starwood Hotels & Resorts Worldwide, Inc.*, 2014 WL 793995 *1 (E.D. La. 2014)(citations omitted)(Barbier, J.)(motion *in limine* granted in bench trial where report and testimony "will not assist the fact-finder in understanding the evidence or determining a fact in issue as required by Rule 702"); *see also Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015)(court did not abuse its discretion by excluding expert testimony about a "customer and practice in the [insurance] industry" where court properly "was concerned that such an untestable, conclusory statement would not assist the jury in evaluating [the insurer's] behavior"; further, the witness's "relevant work experience" was "from the perspective of the insured", not the insurer).

II. **Litolff is not qualified to offer expert opinions concerning franchise development of WOW franchise locations in Georgia and South Carolina**

First the Court must determine whether the witness, because of his specialized knowledge, skill, experience, training, or education in the relevant field, is qualified to express an expert opinion on the topic at issue. *Daubert*, 113 S.Ct. at 2795-96; *Sittig v. Louisville Ladder Group*, 136 F. Supp.2d 610, 616 (W.D. La. 2001). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to

8

testify in a particular field or on a particular subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

In Litolff's "Expert Report"[1], he does not actually claim that he is an expert in the operations and economics of the franchise industry. And he obviously is not. There is nothing in Litolff's "Expert Report", including his CV therein, that refers to any expertise, background, experience in, or even knowledge of the franchise industry.

By contrast, Mark Dayman, whose Report Litolff critiques, is a CPA who also is an expert in "franchise consulting related to operations & finance, value enhancement, strategy, capital markets, and litigation support"[2] based on an extensive history in the hospitality and food and beverage industry with clients that were franchisees. Dayman also is a partner in FranIntel, which "was created in 2008 to provide specific services to franchisors and multi-unit franchisees – developmental, repositioning, turn around, capital planning, and franchise infrastructure planning", as well as a "past Board Member" of a "regional sister organization to the International Franchise Association".[3]

Litolff's CV reveals an accounting career.[4] It identifies his undergraduate degree as accounting and his MBA with concentration in finance. Notably absent from Litolff's CV, however, is any indication that he has any academic or professional

---

[1] A copy of Litolff's "Expert Report", including his CV, is attached hereto as Ex. "2".

[2] Dayman's CV, attached as Ex. "N" to his Report, page 33 of 42; a copy of Dayman's Report is attached hereto as Ex. "3".

[3] Dayman's Report, "B. Qualifications", pages 7 and 8 of 42.

[4] WOW has proffered another CPA as an expert in this case.

9

credentials in franchising, no publications in franchising journals, nor any hint that Litolff has any knowledge or expertise in the operations and economics of the franchise industry.

This Court's *Daubert* inquiry does not stop simply because Litolff has a degree in accounting. That alone does not qualify him to give an opinion on every conceivable potentially accounting related question, especially when, as here, his "Expert Report" has nothing to do with accounting.

For example, in *Sittig v. Louisville Ladder Group*, 136 F. Supp. 2d at 616, the issue was whether a ladder was defective. The court recognized the impeccable credentials of plaintiff's two experts, one with a B.S. in mechanical engineering and a Ph.D. in fluid mechanics who had testified as an expert in at least ten cases, and the other with a Ph.D. in biomechanics and who had testified as an expert in 50 to 100 cases. Despite these degrees and prior testimony, the court disallowed the testimony of both experts because neither had ever worked for a ladder manufacturer, designed ladders, written articles regarding ladders or ladder design, nor testified as an expert regarding ladders.

The logic of that District Court opinion applies directly here. Litolff is an accountant, not a franchise developer. The fact that Litolff is an accountant does not give him expertise in the operations and economics of the franchise industry – the sole subject of his "Expert Report". In Litolff's lengthy resumé there is no hint whatsoever

that he has any relevant experience – let alone *expertise* – in franchises generally or in the markets of Georgia and South Carolina specifically.

WOW's offering Litolff as an expert to answer WOW's "request [for] professional assistance in connection with an evaluation of the report of" Dayman, who prepared a report about franchises generally and the markets of Georgia and South Carolina specifically, is no different than if WOW had offered the opinion of a rocket scientist. Litolff may have accounting expertise, but he is not an expert in anything relevant to the operations and economics of the franchise industry to which his "Expert Report" refers. Being an accountant does not qualify one to testify about the franchise industry.

Therefore, on this basis alone, the Court should exercise its gatekeeper authority under *Daubert* and exclude Litolff from testifying at trial.

### III. **WOW will not meet its burden of proving that Litolff's testimony will be reliable and relevant, that is, that it will assist the trier of fact**

The clear goal of the *Daubert* gatekeeping requirement is to ensure that only expert evidence which is reliable *and* relevant is allowed. *Chambers v. Exxon Corporation*, 81 F.Supp.2d 661, 663 (M.D. La. 2000), *aff'd*, 247 F.3d 240 (5th Cir. 2001); *Francois v. Starwood Hotels & Resorts Worldwide, Inc.*, 2014 WL 793995 *1 (Barbier, J.).

### C. WOW will not meet its burden of proving that Litolff's testimony will be reliable

WOW has provided a 12 page "Expert Report" (plus exhibits) from Litolff dated March 24, 2016. It is *not*, however, an expert's report.

Litolff does not provide any independent expert opinion about the issues in this case. Instead, Litolff's "Expert Report" actually concedes that its real focus is WOW's "request[ing] our professional assistance in connection with an evaluation of the report of" Dayman, Spencer's franchise expert. Litolff's "Expert Report" can best be characterized as an outline of a cross-examination of Dayman. But an expert witness must "bring to the jury more than the lawyers can offer in argument". *In re Tasch v. Sabine Offshore Service, Inc.*, 1999 WL 596261 *2 (E.D. La. 1999) (quoting *In Re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

Pages 1 and 2 of Litolff's "Expert Report" is his "background understanding" of the facts in this case – some of which, but some of which are not, consistent with the 5th Cir. Opinion, *supra.*

Pages 3-10 of Litolff's "Expert Report" is comprised of his "Discussion and Analysis" of his "review[] [of] the Dayman Report."[5] Litolff's first "analysis" is that Dayman's Expert Report is faulty because it is "premised in its entirety upon the

---

[5] Litolff's "Expert Report", p. 3.

assumed existence of a valid and enforceable contract between WOW and Spencer".[6] Whether this is or is not true may be a proper subject for cross-examination of Dayman by WOW's lawyer. But no expert is needed to determine whether Dayman's assumptions are proper.

The remainder of Litolff's "review" of Dayman's Expert Report is that Dayman's assumptions about the franchise business in Georgia and South Carolina are faulty. For example, Litolff's "conclusion" is that Dayman's report "did not evaluate potential locations for WOW stores . . . based on the actual site selection criteria of WOW or the type of store that could be supported in each market."[7] But this, too, is purely a potential area for cross-examination of Dayman. At no time does Litolff bring any expertise to the issue – as he has none.

Moreover, Litolff's report does not contain any information establishing the possibility of meeting the *Daubert* requirement of for determining whether his methodology is valid or reliable. In fact, no methodology is even identified, so it is impossible to discern how it would pass the test.

The bottom line is that Litolff's "Expert Report" may be of assistance to WOW's lawyer's trial preparation – but any testimony by Litolff based on his "Expert Report" is based on a lack of expertise, is unreliable, and will not assist the trier of fact.

---

[6] Litolff's "Expert Report", p. 3.

[7] Litolff's "Expert Report", p. 10.

Thus, because WOW will not meet its burden of proving that Litolff's testimony is reliable, the Court should exercise its gatekeeper authority under *Daubert* and exclude Litolff from testifying at trial.

### D. WOW will not meet its burden of proving that Litolff's testimony will be relevant, that is, will assist the finder of fact

As explained by this Court, proposed expert testimony must be relevant "'not simply in the way all testimony must be relevant (pursuant to Rule 402), but also in the sense that the expert's proposed opinion would *assist the trier of fact* to understand or determine a fact in issue." *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 2012 WL 4959640 *1 (citations omitted)(Barbier, J.)(emphasis added).

Testimony based on the statements made in Litolff's "Expert Report" will not result in making certain facts more probable than not. His "Expert Report" does not reflect that he has done any of his own research or analysis to arrive at any conclusions relevant to any issues in this case – apparently all he did was read Dayman's Expert Report and some documents provided by WOW's counsel. No scientific methodology that he uses is identified, nor is any empirical study he performed.

In fact, Litolff's "Expert Report" reveals that it does not contain any of his own "expert" opinions whatsoever based on scientific, technical, or specialized knowledge applied to the facts of this case. Rather, any testimony of Litolff based on his "Expert Report" will simply be a critique of Dayman's Expert Report. That is the jury's job,

based on any questions asked in the direct and any cross-examination of Dayman. Litolff's testimony will add nothing. It will not assist the trier of fact and, thus, will not be relevant.

Because WOW will not meet its burden of proving that Litolff's testimony is relevant, the Court should exercise its gatekeeper authority and exclude Litolff from testifying at trial.

**IV. Litolff's "expert report" fails to fulfill the requirements of the Federal Rules**

Pursuant to Fed. R. Civ. P. 26a(2), an expert's report shall "contain a complete statement of all opinions to be expressed and the basis and reasons therefore." The comments to Rule 26 state that the expert must prepare a detailed and complete written report stating the testimony that the witness is expected to present during direct examination, together with the reasons supporting his testimony. The purpose of this rule is to allow opposing parties sufficient time prior to trial to prepare for effective cross-examination and arrange for expert testimony from other witnesses.

Pursuant to Fed. R. Civ. P. 37, if a party fails to provide a written report with specific detailed opinions as required by Rule 26, that party will not be allowed to use the report or the witness' testimony at trial.

Litolff's "Expert Report" does not contain "a complete statement of all opinions and the basis and reasons therefor." Instead, it contains no analysis whatsoever. Because Litolff's "Expert Report" fails to set forth the mandated opinions *and bases of*

15

*those opinions*, Spencer is unable to determine exactly whether WOW will proffer *any* viable opinions of Litolff that apply to the facts of this case and, further, whether Spencer needs to prepare its own expert testimony in response.

Thus, in addition to the *Daubert* arguments *supra,* Spencer requests that, because Litolff's "Expert Report" does not comply with the requirements of Rule 26, WOW be prohibited from using Litolff as a witness in support of its case at trial.

## CONCLUSION

Accordingly, for the foregoing reasons, Spencer requests that its motion *in limine* to exclude the testimony of Ralph A. Litolff, Jr., be granted, and that Litolff be prohibited from testifying as an expert at trial.

Respectfully submitted,

/s/ Richard G. Passler
Peter J. Butler, Jr. (Bar #18522) T.A.
Richard G. Passler (Bar #21006)
Susan F. Drogin (Bar #34279)
**BREAZEALE, SACHSE & WILSON, L.L.P.**
909 Poydras Street, Suite 1500
New Orleans, Louisiana 70112
Telephone:     (504) 584-5454
Facsimile:      (504) 584-5452
Email Addresses:     *Peter.Butler.Jr@bswllp.com*
                                     *Richard.Passler@bswllp.com*
                                     *Susan.Drogin@bswllp.com*

and

Beau T. Shrable (Georgia Bar No.: 453977)
**SHRABLE, P.C.**
345 W. Broad Avenue, Suite 201
Albany, Georgia 31701
Telephone: (229) 405-2454
Facsimile: (229) 420-6878
Email Address: *Shrable.PC@outlook.com*

*Counsel for Spencer Franchise Services of Georgia, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ Richard G. Passler