<u>**CONFIDENTIAL**</u>

March 24, 2016

Spencer Franchise Services of Georgia, Inc.

v.

WOW Café and Wingery Franchising Account, L.L.C.

USDC Civil Action No. 2:13-cv-04688
Judge: Carl J. Barbier
Mag. Judge: Joseph C. Wilkinson, Jr.

Expert Report
of
Ralph A. Litolff, Jr., CPA/CFF/ABV, CVA, MBA



2637 Edenborn Avenue, Suite 305
Metairie, Louisiana 70002
Phone: (504) 587-1670

EXHIBIT
2



March 24, 2016

**CONFIDENTIAL**
Mr. Christopher M. Hatcher
Blue Williams, L.L.P.
3421 North Causeway Blvd., Suite 900
Metairie, Louisiana 70002

Re:     **Spencer Franchise Services of Georgia, Inc. v.**
**WOW Café and Wingery Franchising Account, L.L.C.**

**USDC Civil Action No. 2:13-cv-04688**
**Judge: Carl J. Barbier**
**Mag. Judge:  Joseph C. Wilkinson, Jr.**

Dear Mr. Hatcher:

At your request, we submit this letter as a report of our findings, conclusions and opinions in connection with our work on the referenced litigation matter.


I.     **Background Understanding**

Plaintiff, Spencer Franchise Services of Georgia, Inc. ("Spencer" or "Developer"), is a Georgia Domestic Profit Corporation formed on or around June 13, 2007, and is located in Gray, Georgia.   Defendant, WOW Café and Wingery Franchising Account, L.L.C. ("WOW" or "Franchisor") is a Louisiana Limited Liability Company formed on or around January 23, 2004, and is located in Covington, Louisiana.

Spencer entered into an Area Development Agreement with WOW on June 19, 2007.  On that same day, June 19, 2007, Spencer executed an Addendum to Area Development Agreement with WOW.  Hereinafter, the Area Development Agreement and the related Addendum to such Development Agreement are referred to collectively as "Agreement".  Such Agreement refers to WOW as "Franchisor" and to Spencer as "Developer".

In consideration for the exclusive development rights granted to Spencer by WOW, Spencer paid WOW one hundred seventy-five thousand and no/100 dollars ($175,000.00).

1

It is our understanding that the Agreement provides Spencer exclusive development rights in all but two (2) counties in the State of Georgia as well as the right of first refusal to purchase exclusive development rights to the State of South Carolina.  Such Agreement also states that Spencer is to receive certain compensation, as listed below:

- 1.65% of all weekly operating fees paid by Franchise Units in the Spencer areas that are not owned (directly or indirectly) or controlled by Developer and / or its shareholders or owners.

- Broker Fee equal to one-half (1/2) of the initial franchise fee received from each franchisee that opens a new franchise unit in the Spencer Areas.

Section 1.5 of the Agreement states that such exclusive development rights granted to Spencer "shall not include 'non-traditional' locations," including but not limited to, university or college campuses, airports and military bases.  It is our understanding that Franchisor expressly reserved its rights to establish or license another party to establish franchise units at such locations.[1]

It is our understanding that Section 4.2 of the Agreement contained a typographical error, which could be read to alter the meaning of that section in a way that is inconsistent with the intent of the parties at the time of the formation and execution of the Agreement.  Spencer operated under the terms of the contract for a period of greater than five (5) years subsequent to execution of the Agreement as if the typographical error did not exist.

Now, over five years after execution of the Agreement, Spencer seeks to enforce the referenced typographical error contained in the subject Agreement.  It is our understanding that during the latter part of 2012, Spencer filed suit against WOW alleging breach of contract, among other legal causes of action.  Spencer also alleges economic damages in the form of lost profits stemming from the subject Agreement.

For illustrative purposes, graphs depicting the historical trends of the WOW locations opened since the Company's inception are presented as Exhibits 1 – 6 of this report.

Also, you have requested our professional assistance in connection with an evaluation of the report of Mark A. Dayman, dated February 4, 2016 ("Dayman Report").

---

[1] Article 1.5 of WOW Café and Wingery Area Development Agreement executed on June 19, 2007.

## II.   Scope of Work

Our scope of work in connection with this assignment included the following primary tasks:

- Review of First Supplemental, Amended, and Restated Complaint for Damages and Answer to such Complaint.
- Review of WOW Café and Wingery Area Development Agreement and related Addendum, both of which were executed on June 19, 2007.
- Review and analysis of the report of Mark A. Dayman, dated February 4, 2016 and related exhibits.
- Review of various documents relating to WOW's historical operations.
- Review of WOW's website.
- Review of various data related to casual dining brands serving the U.S. market.
- Development of this report and related exhibits.

Documentation considered by us in the course of our work is set forth in Exhibit A.

## III.   Discussion and Analysis

In reviewing the Dayman Report, we noted three primary areas of focus, as follows:

A. Determination as to whether or not the general terms and conditions contained in Agreement between Spencer and WOW are common in franchising and specifically in fast casual and casual dining.

B. Identification of the possible markets for WOW stores in Georgia and South Carolina.

C. Determination of the possible range of WOW franchises that could have been sold, and the range of stores that could have been opened and closed under the Agreements but for the alleged breach of the Agreement.

The conclusions reflected in the Dayman Report are highly speculative, unsupported and potentially misleading in several material respects, as discussed herein. The Dayman analysis is premised in its entirety upon the assumed existence of a valid and enforceable contract between WOW and Spencer, as interpreted by Spencer — a legal conclusion which we understand is very much in dispute.

Each of Dayman's primary area of focus as presented above, are discussed in the following section to this report.

**A. Analysis of the general terms and conditions contained in Agreement between Spencer and WOW.**

Several of the observations stated in the Dayman Report are noteworthy, as stated below:

- On page 13 of 42, Dayman states that a typical Area Development Agreement shifts the burden of development and management from the franchisor to a third party.

- On page 14 of 42, item f., Dayman states that in a typical Area Development Agreement, the developer is typically responsible for franchise development with limited assistance of the franchisor.

- On page 16 of 42, item 4, Dayman states that the agreement between Spencer and WOW make the franchisor responsible for franchise development in applicable geographic area(s).  Dayman further states that this "feature is unusual;" however, provides potential reasons to explain the "unusual" provision of the Agreement.

After reviewing the section of the Dayman Report related to the general terms and conditions contained in the Agreement between Spencer and WOW, an alternate explanation for this "unusual" contract provision whereby the Franchisor is responsible for franchise development, as opposed to the Developer, could be that of a typographical error; however, the Dayman Report makes no mention of such.  Since this is a contractual provision that requires a legal conclusion, the ultimate determination regarding this contract provision, the alleged typographical error, and the contract as a whole, will be decided by the Trier of Fact.

**B. Identification of the possible markets for WOW stores in Georgia and South Carolina.**

The Dayman Report analyzes several "key metrics" in identifying potential markets for WOW stores in both Georgia and South Carolina.  The Dayman Report did not review the specific population and economic requirements of WOW for opening a new location.  Instead, he obtained information from Spencer's legal counsel that "the population requirement is 30,000 people, slightly lower than the competitors."  Other than a representation provided Spencer's legal counsel, Dayman performed no other research or independent verification to determine the requirements of a WOW franchise location.

Dayman's identification of possible markets for WOW stores assumes that every location to be opened is a traditional (full service) location.  Dayman does not consider "non-traditional" stores (i.e. mobile, kiosk and QSR) that could be supported in each geographic area.  Since each type of store is unique, in order to properly project the number of stores to utilize in calculating alleged economic damages, if any, the consideration of store type is imperative.

Because the possible markets for WOW stores in Georgia and South Carolina were not evaluated based on the actual site selection criteria of WOW and the type of store that could be supported in each market, the results of the Dayman analysis with respect to potential markets for WOW stores may provide unreliable results.

**C. Determination of the possible range of WOW franchises that could have been sold, and the range of stores that could have been opened and closed under the Agreements but for the alleged breach of the Agreement.**

The Dayman Report provides an opinion regarding the approximate number of traditional WOW stores that could be developed in Georgia between June 2007 and June 2027, and 2016 through 2035 for the South Carolina market.

State of Georgia Market

The Dayman analysis is premised in its entirety upon the assumed existence of a valid and enforceable contract between WOW and Spencer with respect to the Georgia market, as interpreted by Spencer – a legal conclusion which we understand is very much in dispute.

We have performed our review and analysis of the Dayman Report irrespective of any legal conclusions that may ultimately be reached in this matter, which, based on information provided to us, could make any economic loss calculations (and any associated calculations) no longer relevant / required.

The Dayman Report concludes that the Georgia market could support a total of 61 stores. This opinion is highly speculative since the alleged number of store openings is simply based on the assumption that any area having a population of at least 30,000 people, in conjunction with economic data and other competitors in the market, would be able to support a WOW location.

Dayman's analysis states that "I assumed the current traditional 'full service' store prototype will continue throughout the term of the Agreements." Dayman goes on to state that "WOW claims to have 4 prototypes – mobile, kiosk, QSR, and full services stores ranging from 2,500 – 5,000 SF including a full-service bar."[2]

Furthermore, the Dayman Report does not consider the historical operating history of WOW since its inception in 2001. Instead, the Dayman Report focuses on several of the largest casual dining brands, including Applebee's, Buffalo Wild Wings, Chili's, Hooter's, O'Charley's, T.G.I. Friday's and Wingstop, to name a few. The casual dining chains analyzed by Dayman are reflected in Exhibit H-1, which are included on page 18 of 42 of the Dayman Report.

---

[2] Page 17 of 42, Item 2., of the Dayman Report.

The conclusions reflected in the Dayman Report regarding the number of stores that can be opened in the Georgia market results in estimates that are unsupported, without basis and result in unreliable estimates. In forming a conclusion regarding the potential stores that can be opened in the Georgia market, it is critical to consider the reality of the Georgia market as well as the historical operating performance of WOW, which, as mentioned, is not reflected in the Dayman Report.

For example, Applebee's is the world's largest casual dining brands having nearly 2,000 locations throughout the United States, generating nearly $4.7 billion in sales during 2015 in the United States alone[3]. In comparison, as of the date of this report, there are less than ten (10) traditional WOW locations currently operating in the entire United States.

More specifically, in the Georgia market, the Dayman Report indicates that Applebee's has a total of 51 locations. Based on the assumptions utilized by Dayman, he projects that the Georgia market can support a total of 61 traditional / full service WOW locations, an amount that is nearly 20% higher than the number of Applebee's locations currently in the State of Georgia.

This same comparison can be made to Buffalo Wild Wings, a casual dining chain having over 1,100 locations and generating $1.7 billion in sales during 2015.[4] More specifically, in the Georgia market, the Dayman Report indicates that Buffalo Wild Wings has a total of 21 locations in the state.

Based on the assumptions utilized by Dayman, he projects that the Georgia market can support a total of 61 WOW locations, an amount that is nearly three times that of the current number of Buffalo Wild Wings locations in the State of Georgia and well in excess of the actual number of traditional WOW locations currently operating in the United States.

This same analysis was performed with respect to the other casual dining chains mentioned in the Dayman Report including Chili's, Hooter's, O'Charley's, T.G.I. Friday's and Wingstop, to name a few, and revealed results similar to those demonstrated herein with respect to Applebee's and Buffalo Wild Wings.

As mentioned, the conclusions reached in the Dayman Report with respect to the number of stores that could open in the Georgia market are speculative and purely hypothetical. Nowhere in his report does Dayman offer any basis to explain how, in the Georgia market, the WOW brand will eventually exceed the number of locations of several of the world's largest casual dining brands, particularly since there are currently 2 traditional / full-service locations in the Georgia market and less than ten (10) WOW locations currently operating in the entire United States.

---

[3] www.dineequity.com
[4] Form 10-K of Buffalo Wild Wings, for the fiscal year ended December 27, 2015.

More specifically, without documentation in the form of WOW's prior performance and historical growth, both overall and in other states, Dayman's assumption that WOW would open a greater number of locations in the Georgia market than several of the world's largest casual dining brands in a period of approximately 16 years is pure speculation. As a result, the conclusion reached by Dayman indicating that a total of 61 stores can be supported and opened by WOW in the Georgia market is grossly overstated.

Additionally, Dayman's assumption that WOW could open a total of 61 stores in the Georgia market over a time period of 16 years further assumes that adequate capital would have existed to fund such growth. The assumption that WOW could open 61 stores in the Georgia area in conjunction with the assumption that WOW would have virtually unlimited capital available through investments by potential franchisees and / or self-funded by the Franchisor, is highly speculative.

Even though the projected number of Georgia store openings are a primary conclusion of the Dayman Report, as mentioned, Dayman has assumed that adequate capital will be available to fund such growth.

However, the Dayman report states that "For an emerging brand, marketing fees from franchisees are rarely adequate for this challenge. Accordingly, the franchisor will be required to make a substantial investment to achieve the market perpetration required." Dayman makes and heavily relies on this assumption that the franchisor will be in a position to make substantial investments in the brand, without commenting on the financial positon of the Franchisor. In the event it is determined that the Franchisor has no desire to make "substantial investments" to support 61 franchisee locations in the Georgia market over the 20-year contract period, any and all conclusions made in the Dayman Report would become suspect, at best.

Furthermore, Dayman's projections with respect to the number of stores that WOW would close on an annual basis is extremely unrealistic. The Dayman Report projects that a total of 59 stores will open during the 16-year period including 2009 through 2024. Dayman further projects that a total of 6 stores will close during this projection period, which represents an approximate "closure rate" of 10%. This closure rate is unsupported and in no way reflects the historical performance of WOW locations, which Dayman failed to analyze in any capacity, in preparing his report and arriving at his related conclusions.

Lastly, Dayman's conclusions that "the franchisor and developers could open 61 WOW stores in Georgia over the twenty year term of the Agreements" is actually inconsistent with the evidence presented in Exhibit M-1 to the Dayman Report; whereby, it is indicated that a total of 59 stores would actually open in the Georgia market. Regardless of whether the projected number of stores that can be opened in the state of Georgia is 59 or 61, both numbers are high speculative and without merit.

7

As discussed above, the Dayman analysis with respect to the number of WOW locations that can be opened in the Georgia market is both hypothetical in its application and highly speculative in its result.

Accordingly, to the extent that the Dayman Report grossly overstates the number of WOW locations that can be opened in the Georgia market, any related calculations of lost profits based on such projections must also be disregarded as highly speculative.

State of South Carolina Market

The Dayman analysis is premised in its entirety upon the assumed existence of a valid and enforceable contract between WOW and Spencer with respect to the South Carolina market, as interpreted by Spencer – a legal conclusion which we understand is very much in dispute.

We have performed our review and analysis of the Dayman Report irrespective of any legal conclusions that may ultimately be reached in this matter, which, based on information provided to us, could make any economic loss calculations (and any associated calculations) no longer relevant / required.

The Dayman Report concludes that the South Carolina market could support a total of 21 stores. This opinion is highly speculative since the alleged number of store openings is simply based on the assumption that any area having a population of at least 30,000 people, in conjunction with economic data and other competitors in the market, would be able to support a WOW location.

In the South Carolina market, the Dayman Report indicates that Applebee's has a total of 26 locations in the state. Based on the assumptions utilized by Dayman, he projects that the South Carolina market can support a total of 21 traditional / full service WOW locations. As previously mentioned, as of the date of this report, there are less than ten (10) traditional WOW locations currently operating in the entire United States.

In the South Carolina market, the Dayman Report indicates that Buffalo Wild Wings has a total of 12 locations in the state. Based on the assumptions utilized by Dayman, he projects that the South Carolina market can support a total of 21 WOW locations, an amount that is nearly double that of the current number of Buffalo Wild Wings locations in the State of South Carolina.

This same analysis was performed with respect to the other casual dining chains mentioned in the Dayman Report including Chili's, Hooter's and O'Charley's, to name a few, and revealed results similar to those as demonstrated herein with respect to Applebee's and Buffalo Wild Wings.

8

As mentioned, the conclusions reached in the Dayman Report with respect to the number of stores that could open in the South Carolina market is speculative and purely hypothetical. Nowhere in his report does Dayman offer any basis to explain how, in the South Carolina market, the WOW brand will eventually become amongst the largest restaurant chains having a presence in the South Carolina market, particularly since there has never been a full-service / traditional location open in the South Carolina market as of the date of this report. Furthermore, less than ten (10) traditional WOW locations are currently operating across the entire United States.

More specifically, without documentation in the form of WOW's prior performance and growth, both overall and in other states, Dayman's assumption that WOW would develop and open more locations in the South Carolina market than several of the world's largest casual dining brands over a period of approximately 20 years is pure speculation. As a result, the conclusion reached by Dayman indicating that a total of 21 stores can be supported and opened by WOW in the South Carolina market is grossly overstated.

Additionally, Dayman's assumption that WOW could open a total of 21 stores in the South Carolina market over a period of 20 years assumes that adequate capital would have existed to fund such growth. The assumption that WOW could open 21 stores in the South Carolina area, in conjunction with the assumption that WOW would have virtually unlimited capital available through investments by potential franchisees and / or self-funding by Franchisor, is highly speculative.

Even though the projected number of stores that can be opened in the South Carolina market are a primary conclusion of the Dayman Report, as mentioned, Dayman has assumed that adequate capital will be available to fund such growth.

However, the Dayman report states that "For an emerging brand, marketing fees from franchisees are rarely adequate for this challenge. Accordingly, the franchisor will be required to make a substantial investment to achieve the market perpetration required." Dayman makes and heavily relies on this assumption that the franchisor will be in a position to make substantial investments in the brand, without commenting on the financial positon of the Franchisor. In the event it is determined that the Franchisor has no desire to make "substantial investments" in 21 franchisee locations in the South Carolina market over the 20-year contract period, any and all conclusions made in the Dayman Report would become suspect, at best.

Furthermore, Dayman's projections with respect to the number of stores that WOW would close on an annual basis is extremely unrealistic. The Dayman Report projects that a total of 20 stores will open during the 20-year period including 2016 through 2035. Dayman further projects that a total of 2 stores will close during the projection period. This represents an approximate "closure rate" of 10% of new stores opened. This closure rate is unsupported and in no way reflects the historical performance of WOW locations, which Dayman failed to analyze in any capacity, in preparing his report and arriving at his related conclusions.

9

Lastly, Dayman's conclusions that "the franchisor and developers could open 21 WOW stores in South Carolina over the twenty year term of the Agreements" is actually inconsistent with the evidence presented in Exhibit M-2 to the Dayman Report; whereby, it is indicated that a total of 20 stores would actually open in the South Carolina market. Regardless of whether the projected number of stores that can be opened in the State of South Carolina is 20 or 21, both numbers are high speculative and without merit based.

As discussed above, the Dayman analysis with respect to the number of WOW locations that can be opened in the South Carolina market is both hypothetical in its application and highly speculative in its result.

Accordingly, to the extent that the Dayman Report grossly overstates the number of WOW locations that can be opened in the South Carolina market, any related calculations of lost profits based on such projections must also be disregarded as highly speculative.


## IV.    Summary of Conclusions and Opinion

The primary source of contention in this matter relates to several contractual provisions that require a legal conclusion, the ultimate determination regarding this contract provision, the alleged typographical error, and the contract as a whole, will be decided by the Trier of Fact. We are making no legal conclusions with respect to any of the contract provisions or any other matters discussed in this report.

Dayman acknowledges that the agreement between Spencer and WOW contains several features that are "unusual," particularly the provision that makes the franchisor responsible for franchise development in applicable geographic area(s); however, fails to offer the explanation that this "unusual" provision may be the result of a typographical error.

The Dayman Report did not evaluate potential locations for WOW stores in Georgia and South Carolina based on the actual site selection criteria of WOW or the type of store that could be supported in each market. As a result, it is our opinion that the results of the Dayman analysis with respect to potential markets for WOW stores provides unreliable results.

The conclusions contained in the Dayman Report with respect to the number of WOW locations that can be opened in the Georgia and South Carolina markets are both hypothetical in application and highly speculative in their results.

The conclusions reflected in the Dayman Report are suspect at best, and solely dependent upon the validity of the assumptions employed.  Each and every one of Dayman's assumptions must be true for his conclusions to be correct.  The accuracy and reasonableness of the underlying assumptions employed are unsupported, and the resulting quantification of projected stores that could be opened in Georgia and South Carolina are unreliable.

As summarized above, to the extent that the Dayman Report grossly overstates the number of WOW locations that can be opened in the Georgia and South Carolina markets, any related calculations of lost profits based on such projections must also be disregarded as highly speculative.

## V.    Disclosures

We are a firm of certified public accountants and consultants fully qualified to conduct the analysis described herein.  Our engagement was conducted in accordance with the Statement on Standards for Consulting Services, as promulgated by the American Institute of Certified Public Accountants (AICPA).  If requested to do so, we are prepared to testify in support of our work and the findings and conclusions resulting from our work in this matter.

We have no known financial or business relationship with any of the named parties to this matter.  Our fees are based upon the time devoted to this matter by members of our professional staff, at standard hourly rates in effect for each individual.  My current billing rate is $295 per hour.  Our compensation is not contingent upon the outcome of this matter.

We have not compiled, reviewed, or audited any of the financial information or documents received during this engagement and, accordingly, do not express an opinion or any other form of assurance on them.

This report was prepared exclusively for the use of the Court, legal counsel to the parties involved in this matter, and others who have a right to the information contained herein in the context of the subject legal proceeding.  It is confidential and is not to be distributed to or relied upon by others.

We reserve the right to amend, modify or supplement this report based upon the receipt of new or additional information; however, we have no responsibility to update this report to reflect the receipt of additional information or to take into account events and circumstances occurring subsequent to the date of this report.

Our work on this case was conducted by me and by other members of our professional staff working under my direction and supervision. A listing of documents reviewed is included as Appendix A, a copy of my resume is included as Appendix B and a copy of my case listing is included as Appendix C, and a listing of speeches made and articles written is included as Appendix D to this report.

If you have any questions regarding this report or the results of our work to date, I would be pleased to respond.

Very truly yours,
**RAL FORENSICS, L.L.C.**

Ralph A. Litolff, Jr., CPA/CFF/ABV, CVA, MBA

**EXHIBITS**

Exhibit 1

Spencer Franchise Services of Georgia, Inc. v. WOW Café and Wingery Franchising Account, LLC



Total WOW Locations Open at End of Year

* Note: 2016 data is for the period ending January 31, 2016.

Spencer Franchise Services of Georgia, Inc. v. WOW Café and Wingery Franchising Account, LLC

Exhibit 2



Traditional and Non-Traditional WOW Locations Open at End of Year

* Note: 2016 data is for the period ending January 31, 2016.



Exhibit 3

Spencer Franchise Services of Georgia, Inc. v. WOW Café and Wingery Franchising Account, LLC



Openings and Closings of WOW Locations (All Types) by Year

* Note: 2016 data is for the period ending January 31, 2016.

Spencer Franchise Services of Georgia, Inc. v. WOW Café and Wingery Franchising Account, LLC

Exhibit 4



Openings and Closings of Traditional WOW Locations by Year

* Note: 2016 data is for the period ending January 31, 2016.





Spencer Franchise Services of Georgia, Inc. v. WOW Café and Wingery Franchising Account, LLC

Exhibit 5

Openings and Closings of Non-Traditional WOW Locations by Year

* Note: 2016 data is for the period ending January 31, 2016.

Exhibit 6

Spencer Franchise Services of Georgia, Inc. v. WOW Café and Winery Franchising Account, LLC
Schedule of Actual Openings and Closings of WOW Locations

**Actual Locations - United States**

| | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 [1] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Traditional:** | | | | | | | | | | | | | | | | |
| Number of Locations - Prior Year EOY | - | 1 | 2 | 6 | 10 | 19 | 24 | 35 | 41 | 34 | 27 | 22 | 17 | 12 | 8 | 10 |
| Openings - Current Year | 1 | 1 | 4 | 4 | 9 | 8 | 14 | 14 | 4 | 1 | 4 | 1 | 1 | - | 2 | 1 |
| Closings - Current Year | - | - | - | - | - | 3 | 3 | 8 | 11 | 8 | 9 | 6 | 6 | 4 | - | 2 |
| Number of Locations - Current Year EOY | 1 | 2 | 6 | 10 | 19 | 24 | 35 | 41 | 34 | 27 | 22 | 17 | 12 | 8 | 10 | 9 |
| **Non-Traditional:** | | | | | | | | | | | | | | | | |
| Number of Locations - Prior Year EOY | - | - | - | - | - | 1 | 3 | 8 | 11 | 18 | 25 | 44 | 50 | 53 | 56 | 52 |
| Openings - Non-Traditional - Current Year | - | - | - | - | 1 | 2 | 6 | 5 | 8 | 8 | 20 | 9 | 10 | 11 | 5 | - |
| Closings - Non-Traditional - Current Year | - | - | - | - | - | - | 1 | 2 | 1 | 1 | 1 | 3 | 7 | 8 | 9 | - |
| Number of Locations - Current Year EOY | - | - | - | - | 1 | 3 | 8 | 11 | 18 | 25 | 44 | 50 | 53 | 56 | 52 | 52 |
| **Total:** | | | | | | | | | | | | | | | | |
| Number of Locations - Prior Year EOY | - | 1 | 2 | 6 | 10 | 20 | 27 | 43 | 52 | 52 | 52 | 66 | 67 | 65 | 64 | 62 |
| Openings - Non-Traditional - Current Year | 1 | 1 | 4 | 4 | 10 | 10 | 20 | 19 | 12 | 9 | 24 | 10 | 11 | 11 | 7 | 1 |
| Closings - Non-Traditional - Current Year | - | - | - | - | - | 3 | 4 | 10 | 12 | 9 | 10 | 9 | 13 | 12 | 9 | 2 |
| Number of Locations - Current Year EOY | 1 | 2 | 6 | 10 | 20 | 27 | 43 | 52 | 52 | 52 | 66 | 67 | 65 | 64 | 62 | 61 |

[1] For the period ending January 31, 2016.

Source: Schedule of WOW Café Location Development / Attrition, for the years 2001 through 2015 and the month ended January 31, 2016

APPENDICES

Appendix A

**Spencer Franchise Services of Georgia, Inc.**
**v. WOW Café and Wingery Franchising Account, L.L.C.**
**Listing of Documents Reviewed**

<u>Legal Documents</u>

- Complaint for Damages and Exhibits, filed in the United States District Court for the Eastern District of Louisiana, on May 31, 2013;

- First Supplemental, Amended, and Restated Complaint for Damages filed in the United States District Court for the Eastern District of Louisiana, on October 22, 2013;

- Answer to Plaintiff's First Supplemental, Amended, and Restated Complaint for Damages filed in the United States District Court for the Eastern District of Louisiana, on November 11, 2013;

<u>Expert Reports</u>

- Expert Report (Business Valuation) prepared by Mark A. Dayman of CapVal-American Business Appraisers, LLC, dated April 25, 2014; and Supplement to Expert's Certification, dated June 16, 2014;

- Expert Report (Lost Royalties and Franchise Fees) prepared by Stephen G. Romig of LaPorte CPAs & Business Advisors, dated April 30, 2014; and Compensation Disclosure, dated June 16, 2014;

- Expert Report (Lost Royalties and Franchise Fees) prepared by Dennis J. Tizzard of Ericksen Krentel & LaPorte, L.L.P., dated May 27, 2014;

- Expert Report (Range of Lost WOW Franchise Openings) prepared by Mark A. Dayman of CapVal-American Business Appraisers, L.L.C., dated February 4, 2016, and which Supersedes the Dayman report dated April 25, 2014.

- Expert Report (Lost Royalties and Franchise Fees) prepared by Michele Avery of LaPorte CPAs & Business Advisors, dated February 26, 2016;

Appendix A

**Spencer Franchise Services of Georgia, Inc.**
**v. WOW Café and Wingery Franchising Account, L.L.C.**
**Listing of Documents Reviewed**

Documents Provided by Counsel

- Schedule of WOW Café Location Development / Attrition, for the years 2007 through 2013 (Bates: 2183 – 2190);

- Schedule of WOW Café Location Development / Attrition, for the years 2001 through 2015 and the month ended January 31, 2016;

- Schedule of WOW Café Locations in the State of Georgia, as of February 1, 2016 (Bates: 11549);

- Franchise Disclosure Documents of WOW Café, for the years 2014 and 2015;

- Sales and Royalty Reports for Spencer Franchise Services, for the years 2007 through 2014 (Bates: 776, 777, 778, 65, 63, 61);

- Royalty Information and Weekly Sales Reports for Spencer Franchise Services, for the years 2010 through 2012 (Bates: 3181 – 3293);

- Schedule of monthly revenue for Georgia and South Carolina locations of WOW Café for the years 2014 and 2015 (Bates: 2416);

- Custom Transaction Detail Report of WOW Café & Wingery Franchising, LLC for Spencer Franchise Services, for the period September 2014 through December 2016;

- Schedule of Area Development of WOW Café & Wingery Franchising, LLC for the period August 1, 2014 through October 21, 2015.

Appendix B

# Ralph A. Litolff, Jr., CPA/ABV/CFF, CVA, MBA
## Curriculum Vitae
2637 Edenborn Avenue, Suite 305
Metairie, Louisiana 70005
504-587-1670
EMAIL: RALPHL@RALFORENSICS.COM

### RANGE OF EXPERIENCE

Over 21 years of experience in public accounting with an emphasis on providing financial consulting and accounting services, as follows:

- Business Valuations
- Class Action Litigation Services
- Economic Damage Analysis
- Expropriation Analysis
- Financial Analyses, Forecasts/Projections
- Financial Audits
- Forensic Accounting
- Interim-CFO Services
- Internal Control Reviews
- Litigation Support Services
- Mergers & Acquisitions
- Process Improvement Studies
- Profitability Enhancement Studies
- Strategic Business Planning

### PROFESSIONAL CERTIFICATIONS

- Certified Public Accountant (LA)
- Accredited in Business Valuation
- Certified in Financial Forensics
- Certified Valuation Analyst
- Certified Financial Services Auditor
- Certified Government Financial Manager

### PROFESSIONAL AFFILIATIONS

American Institute of Certified Public Accountants
*Appointed to serve as CPA Ambassador*
*Appointed to serve as CFF Champion for State of Louisiana*
Society of Louisiana Certified Public Accountants
*Business Consulting Committee, Past Chairman*
*Career Awareness Committee, Past Chairman*
*Litigation Services Committee / Business Valuation Sub-Committee, Past Member*
National Association of Certified Valuation Analysts

### CIVIC AFFILIATIONS

Loyola University of New Orleans Alumni Association – Past President
University of New Orleans MBA Association
Arts Council of New Orleans
New Orleans Symphony Finance Committee
St. Tammany West Chamber of Commerce

### EDUCATION

MBA, Finance, University of New Orleans (1999)
BBA, Accounting, Loyola University of New Orleans (1994)



Appendix C

# RALPH A. LITOLFF, JR., CPA/ABV/CFF, MBA, CVA

## Summary of Selected Litigation, Insolvency and Regulatory Consulting Engagements

### Provision of Expert Trial Testimony (never denied as expert when offered)

| Years | MATTER | INDUSTRY | TYPE OF CASE |
|---|---|---|---|
| 2015 | ◆ Jefferson Townhouse Association, Inc. v. Wagner-Truax Co., Inc.*, *24th Judicial District Court, Parish of Jefferson, State of Louisiana* | Condominium Association | Economic Loss |
| 2014 | ◆ Julia Hively Williams* v. Michael Dudley Williams, Sr., *The Family Court, Parish of East Baton Rouge, State of Louisiana* | Divorce | Community Property Partition |
| 2013 | ◆ City of Baton Rouge and Parish of East Baton Rouge v. Charlene McDonald Nelson and Michael Houston Nelson, Kathleen McDonald Saska*, *19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana* | Commercial Real Estate | Expropriation/Economic Loss |
| 2012 | ◆ Lane M Greco v. State of Louisiana, Department of Transportation and Development and Phylway Construction, L.L.C.* *25th Judicial District Court, Parish of Plaquemines, State of Louisiana* | Construction | Economic Loss |
| 2012 | ◆ Billy Miller v. New Orleans Saints* *District 8, Office of Workers' Compensation State of Louisiana* | Professional Athlete | Economic Loss |
| 2012 | ◆ Christopher J. Sacco* v. Karyl Paxton, Karyl Paxton Design, Inc., and Pierce Paxton Design Studio, L.L.C. *Civil District Court for the Parish of Orleans, State of Louisiana* | Wholesale / Retail | Economic Loss |

Appendix C

RAL FORENSICS
ACCOUNTING | CONSULTING

# RALPH A. LITOLFF, JR., CPA/ABV/CFF, MBA, CVA

**Summary of Selected Litigation, Insolvency and Regulatory Consulting Engagements**

Provision of Expert Trial Testimony (never denied as expert when offered) – Continued

| Years | MATTER | INDUSTRY | TYPE OF CASE |
|---|---|---|---|
| 2011 | ◆ Vidhyut Lodging, LLC d/b/a Glenrose Motel* v. Evanston Insurance Company, Heisser's Body Shop, Inc. d/b/a Heisser's Foreign Car Parts, Metro Public Adjustment, Inc. and XYZ Insurance Co. *Civil District Court, Parish of Orleans, State of Louisiana* | Tourism | Economic Loss |
| 2011 | ◆ J. Peter Laborde, Jr.* v. Pia Lyons Laborde *Civil District Court, Parish of Orleans, State of Louisiana* | Divorce | Community Property Partition |
| 2010 | ◆ Mark Perot* v. Yulonda Perot *2nd Judicial District Court, Claiborne Parish, State of Louisiana* | Divorce | Business Valuation - Community Property Partition |
| 2009 | ◆ Maurice Bethley* v. Allstate Insurance Company and Justin A. Babin *United States District Court, Eastern District of Louisiana* | Construction | Personal Injury/Lost Wages |
| 2007 | ◆ Neal Auction Company, Inc.* v. Lafayette Insurance Company and Eustis Insurance, Inc. *Civil District Court, Parish of Orleans, State of Louisiana* | Auction Company | Economic Damages |
| 2007 | ◆ Chalmette Retail Center, L.L.C.* v. Lafayette Insurance Company, Fire Group, United Fire & Casualty, Emery and James, LTD., Property Loss Consultants, L.L.C. and Property Loss Consulting, Inc. *34th Judicial District Court for the Parish of St. Bernard, State of Louisiana* | Retail | Economic Loss |