```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


SPENCER FRANCHISE SERVICES                CIVIL ACTION
OF GEORGIA, INC.


VERSUS                                    NO: 13-4688


WOW CAFÉ AND WINGERY                      SECTION: "J"(2)
FRANCHISING ACCOUNT, LLC
```

### ORDER AND REASONS

Before the Court is a *Motion in Limine* **(Rec. Doc. 124)** filed by Plaintiff, Spencer Franchise Services of Georgia, Inc. ("Spencer"), and an opposition thereto **(Rec. Doc. 125)** filed by Defendant, WOW Café and Wingery Franchising Account, L.L.C. ("WOW"). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED.**

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This case is before the Court on remand from the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit summarized the facts of the case as follows:

> WOW Cafes are "American grill"-style restaurants located throughout the United States. WOW owns the WOW restaurant concept, and it authorizes and controls various aspects of brick-and-mortar WOW locations via franchise agreements.
>
> In 2007, Spencer and WOW entered into the "Area Development Agreement" ("ADA") at issue in this case.

1

Pursuant to the ADA, Spencer promised to pay WOW $175,000 up front and open two WOW franchises in Georgia. Spencer also promised to manage and provide support to WOW franchise locations in Georgia, advertise WOW restaurants, and furnish regular reports to WOW regarding the franchises' performance. In return, WOW granted Spencer the exclusive right and option to "establish, operate, and/or provide guidance to multiple WOW Café Franchise businesses" in Georgia, with the exception of two counties in the state. WOW promised not to "establish or operate Wow Café Units" or "grant a franchise" in Georgia to any entity other than Spencer, except as otherwise provided in the ADA. The ADA gave Spencer the right to receive weekly operating fees and royalty payments from Georgia franchise locations; broker fees for newly-opened franchises; and advertising fees.

The dispute in this case revolves around a single word in Article 4.2 of the ADA, which provides in relevant part:

In addition to Developer's obligation to open its own Franchise Units as described above, Franchisor shall, at a minimum, sell or cause some third party to sell the number of Franchise Units set forth on the Minimum Development Requirements, which is attached hereto as Schedule 2.

Critically, the ADA defines Spencer as the "Developer" and WOW as the "Franchisor." Thus, as written, the ADA obligates WOW—not Spencer—to sell (or cause some third party to sell) a minimum number of franchise agreements.

[…]

Both parties filed multiple cross-motions for partial summary judgment. The district court concluded as a matter of law that the word "Franchisor" in Article 4.2 of the ADA was a typo. The district court believed that the contract would be absurd unless the parties intended that word to be "Developer," such that Spencer, not WOW, had the obligation to sell a minimum number of franchise agreements under the ADA. The district court therefore concluded that the parties had committed a "clear mutual error" and ultimately ordered the rescission of the contract. Because, in the district court's view, none of Spencer's claims could proceed to trial in the absence

2

of an enforceable contract, the district court entered summary judgment in WOW's favor on all of Spencer's claims.

*Spencer Franchise Servs. of Ga., Inc. v. WOW Cafe & Wingery Franchising Account, L.L.C.*, 624 F. App'x 842, 843-44 (5th Cir. 2015).

On August 29, Spencer filed a notice of appeal to the Fifth Circuit. (Rec. Doc. 105). After considering the merits, the Fifth Circuit reversed this Court's grant of summary judgment to WOW. (Rec. Doc. 108). Specifically, the Fifth Circuit found that genuine issues of material fact existed as to whether the parties entered into the contract suffering from error, precluding summary judgment. Thus, the Fifth Circuit remanded the case to this Court for a factfinder to determine whether the parties were in error.

On remand, Spencer filed a motion for partial summary judgment on the issue of attorneys' fees and costs, which this Court denied. (Rec. Doc. 118.) Spencer subsequently filed the instant motion, seeking to exclude Defendant's proposed expert witness, Ralph A. Litolff, Jr. WOW opposed the motion on April 12.

**PARTIES' ARGUMENTS**

Spencer seeks to exclude Litolff's expert testimony for three reasons. First, Spencer argues that Litolff is not qualified to testify about the franchising business in general or about the report of Spencer's franchising expert in general. Second, Spencer

3

claims that Litolff's testimony will be unreliable and irrelevant because it will not assist the trier of fact. In support of this assertion, Spencer emphasizes Litolff's lack of experience and specialized knowledge of the franchising business. Third, Spencer argues that the Court should exclude Litolff's testimony because his expert report does not comply with the Federal Rules of Civil Procedure. Specifically, Spencer asserts that Litolff's report fails to "contain a complete statement of all opinions to be expressed and the basis and reasons therefore," as required by Rule 26(a)(2)(B).

In its opposition, WOW argues that the Court should allow Litolff to testify as an expert witness on the subject of business valuation. First, WOW claims that Litolff's proposed testimony is based on sufficient facts or data. Specifically, WOW asserts that Litolff relied on the underlying contracts; the analysis and report of Plaintiff's expert, Mark Dayman; documents relating to WOW's historical operations; WOW's website; and data relating to casual dining brands in the United States. Second, WOW contends that Litolff's findings and conclusions are reliable because they comported with the flexible business valuation methods used by professionals in his line of work. Third, WOW argues that Litolff's testimony will help the trier of fact determine whether WOW

breached the agreement and whether Spencer sustained any damages as a result of the breach.

Fourth, WOW claims that Litolff is qualified to testify as an expert on business valuation. WOW further contends that Litolff's lack of specialization affects the weight of his testimony, not its admissibility. WOW argues that business valuation is Litolff's area of expertise, as he has two decades of experience in the field and holds professional certifications in the field. Litolff has been accepted as an expert witness in courts throughout Louisiana and has testified in cases involving claims for damages involving franchises and restaurants. Finally, WOW contends that Litolff's expert report satisfies Rule 26(a)(2) because it expresses the bases for Litolff's opinions.

## **LEGAL STANDARD**

Federal Rule of Evidence 702 imposes a special "gatekeeping" obligation upon a trial judge to ensure that expert testimony or evidence is both relevant and reliable. Rule 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert

have been reliably applied to the facts of the case. Fed. R. Evid. 702. The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. *Moore v. Ashland Chem. Co.*, 151 F.3d 269, 276 (5th Cir. 1998).

   The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether

the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has considerable leeway in determining how to test an expert's reliability.") (internal quotation marks omitted).

## DISCUSSION

Spencer questions Litolff's qualifications, the reliability of his opinion, and the relevance of his testimony. In addition, Spencer asserts that Litolff's report is deficient according to the Federal Rules of Civil Procedure. The Court will address each contention in turn.

### I. Litolff's qualifications

The Court must first determine whether Litolff is qualified to offer expert testimony on the issues of breach of contract and damages in this case. Spencer argues that Litolff is not qualified to testify as an expert on franchise development based on his specialized knowledge, skill, experience, training, or education in the field. Spencer points out that Litolff's background is in

accounting. He earned his undergraduate degree in accounting and an MBA in finance. However, Spencer argues that Litolff lacks academic or professional credentials in franchising, publications in franchising journals, and knowledge or expertise in operations and economics of the industry.

In opposition, WOW points out that courts of this District have often allowed certified public accountants to give expert testimony about business valuations or damages calculations. Further, WOW claims that Litolff is qualified to testify as an expert on business valuation. WOW emphasizes that an expert may testify about subjects outside his area of practice and that a lack of specialization affects only the weight of the expert's testimony, not its admissibility. With respect to Litolff's credentials, WOW points to his twenty years of experience in business valuations, economic damage analysis, financial analysis, forecast and projections, forensic accounting, litigation support services, and strategic planning. Litolff is also a certified public accountant and has received accreditations or certifications in business valuation, financial forensics, and valuation analysis. Finally, WOW points out that Dayman and Litolff have similar certifications and titles.

To qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that

his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co.*, 526 U.S. at 147 (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* (citing *Daubert*, 509 U.S. at 596).

"A lack of specialization should generally go to the weight of the evidence, rather than its admissibility." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596). "Thus 'an expert witness is

not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" *Id.* (quoting *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100 (10th Cir. 1991)).

The Court concludes that Litolff is qualified to testify as an expert witness in the field of business valuation. His qualifications speak for themselves. Moreover, district courts in the Fifth Circuit have reached the same result in similar cases. For example, the Western District of Louisiana has found that specialization in the underlying field is unnecessary for an expert on business valuation. *Willis v. TRC Companies, Inc.*, No. 05-1010, 2008 WL 3911040, at *2 (W.D. La. Aug. 25, 2008). In *Willis*, the court allowed an expert to testify as to the valuation of an engineering firm despite the fact that the witness "has not taught in the business valuation field, is not published, and holds no business valuation certifications." *Id.* However, the witness "is a certified public accountant . . ., holds a Master's degree in Business Administration, has thirty years of experience in business, including serving as a C.E.O. of a technologies company, has spent much of his career valuing and acquiring engineering firms, and now serves as a valuation consultant with a specific focus on engineering and consulting businesses." *Id.*

In a similar case, the Southern District of Texas found that a witness was qualified to testify on business valuation even though he lacked expertise in valuing oil and gas properties and companies. *Floyd v. Hefner*, 556 F. Supp. 2d 617, 646 (S.D. Tex. 2008). The expert was a certified public accountant and had "additional specialized training in valuation methodologies and their application as documented by his Chartered Financial Analyst and Accredited in Business Valuation designations." *Id.* at 646 n. 19. Litolff's experience is comparable to that of the expert witnesses in *Willis* and *Floyd*. Therefore, the Court finds that he is qualified as an expert witness on the subject of business valuation.

## II. Reliability of Litolff's testimony

Spencer challenges the reliability of Litolff's testimony, claiming that the testimony is not based on reliable principles and methods. WOW also raises the issue of whether Litolff's testimony is supported by sufficient facts or data. The Court will discuss each issue in turn.

### a. Sufficient facts or data underlying Litolff's testimony

In its motion, Spencer does not directly address whether sufficient facts or data support Litolff's testimony. However, WOW argues that Litolff's report is based on sufficient facts or data. Litolff states that he reviewed the underlying contracts, Dayman's

11

report, documents pertaining to WOW's historical operations, WOW's website, and data relating to casual dining brands in the United States market. WOW argues that Appendix A fully describes all documents underlying Litolff's report.

Rule 702 plainly requires that expert testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). Expert testimony is not based on sufficient facts or data when it lacks an evidentiary basis or factual support. *See Wilcox v. Max Welders, L.L.C.*, No. 12-2389, 2013 WL 4517907, at *1 (E.D. La. Aug. 22, 2013). On the other hand, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

The Court finds that Litolff's testimony is based on sufficient facts or data. Litolff's expert report addresses breach of contract and any ensuing damages, two issues still before this Court. Therefore, any argument about the bases and sources of Litolff's opinion can be explored through cross-examination.

### b. Litolff's reliable principles and methods

Spencer claims that Litolff's expert report is unreliable because the report consists solely of subjects that WOW could use to cross-examine Dayman. Further, Spencer argues that the Court

12

cannot determine whether Litolff's methods were reliable because the report does not identify or explain any methods or principles. Spencer also attacks Litolff's "background understanding" of the facts as inconsistent with the Fifth Circuit's opinion in this case. WOW contends that Litolff's principles and methods were reliable because "[b]usiness valuation methodology is highly flexible." (Rec. Doc. 125, at 10.) WOW also argues that Litolff's methodology comported with the standards imposed by the American Institute of Certified Public Accountants.

Indeed, courts of this District have recognized the inexactitude of business valuation determinations. "Business valuations methods are not exact and are basically guides for buyers and sellers to use in an effort to determine what would be the fair market value for a given business. Given the dynamics of businesses and business practices, and factoring in circumstance[s] that may be unique to the parties, an inflexible formula for determining loss of value would be impracticable." *Perfect Co. v. Essex Ins. Co.*, No. 07-7642, 2010 WL 2835889, at *6 (E.D. La. July 15, 2010) (quoting *Achee v. Nat'l Tea Co.,* 686 So. 2d 121, 125 (La. Ct. App. 1996)); *see also Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 48 F. Supp. 3d 916, 937 (E.D. La. 2014). Three recognized business valuation methods are (1) the income-based approach, (2) the market-based approach, and (3) the asset-based approach. *Dunn v.*

13

*C.I.R.*, 301 F.3d 339, 350 (5th Cir. 2002); *Dawkins v. Hickman Family Corp.*, No. 09-164, 2011 WL 2436537, at *4 (N.D. Miss. June 13, 2011).

Dayman's report seems to use the market-based approach, "i.e., value based on comparison to comparable businesses existing in the particular market adjusted for the individual characteristics and risks associated with the specific business." *Dawkins*, 2011 WL 2436537, at *4 (quoting *Sys. Components Corp. v. Florida Dept. of Transp.*, 14 So. 2d 967, 980 (Fla. 2009)). Litolff's report, which calls Dayman's report into question, can be said to use the same methodology. In fact, Litolff criticizes Dayman for failing to consider the specific characteristics of WOW's business, namely the small number of WOW-franchised establishments and the capital needed to establish new franchises. Because Litolff's report is based on an accepted business valuation methodology, the Court finds that it is based on reliable principles and methods.

### III. Relevance of Litolff's testimony

Spencer claims that Litolff's testimony will be irrelevant because it will not assist the trier of fact. In support of this assertion, Spencer emphasizes that Litolff's report merely criticizes Dayman's report. Spencer argues that Litolff does not provide an opinion of his own, which makes his report irrelevant. In opposition, WOW argues that Litolff's expertise as a business

evaluator and certified public accountant will assist the trier of fact in determining whether to rely on the damages calculations of Plaintiff's expert, Dayman.

"[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant . . ., but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92). Under Rule 702, "an expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding." *United States v. Downing*, 753 F.2d 1224, 1229 (3d Cir. 1985). Trial courts have broad discretion to decide "whether the jury could adeptly assess the situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

Spencer claims that Litolff's opinion is irrelevant because he merely questions Dayman's opinion without offering an opinion of his own. Spencer contends that the jury can decide whether to accept Dayman's testimony based on his answers to direct and cross-examination, without needing to hear Litolff's testimony discrediting Dayman's methodology. However, business valuation is not a common-sense subject that a jury member could evaluate based

on his own common experience and knowledge. Therefore, the Court finds that Litolff's testimony will help the trier of fact determine whether to accept Dayman's opinion on damage calculations.

### IV. Rule 26(a)(2)(B) expert report requirements

Finally, Spencer argues that Litolff's report does not comport with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Pursuant to the rules, an expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Spencer claims that the report does not contain a complete statement of all Litolff's opinions and the bases and reasons for those opinions. WOW contends that Litolff's opinions and the underlying bases are set out in the "Summary of Conclusions and Opinion" section of the report.

The Court finds that Litolff's report sufficiently sets out the opinions he will express and the bases for these opinions. Litolff's report contains a "Summary of Conclusions and Opinion"

that describes each of his opinions. The body of the report sufficiently sets out the bases and reasons for the opinions. Litolff's opinions generally criticize the Dayman report's conclusions about the number of franchises the Georgia and South Carolina markets should support. While Litolff does not express an opinion on the subject, this fact does not render his statement of opinions incomplete. Therefore, Litolff's report comports with the Federal Rules of Civil Procedure.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Spencer's Motion in Limine **(Rec. Doc. 124)** is **DENIED**.

New Orleans, Louisiana this 15th day of April, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT